### 6513. RIVES v. HOLMES.

1. There was some evidence which authorized the verdict, and, in view of the positive testimony adduced in behalf of the claimant, it was not error to permit, in corroboration of the claimant's testimony as to the ownership of the property levied on, the introduction of his muniments of title to the land whereon this personal property was found. For the same reason the bill of lading which was objected to seems to have been admissible. But the admission of this testimony, even if erroneous, was not sufficiently material to be prejudicial.

2. (a) In the absence of proof showing a contract of sale, guano furnished by a landlord to a tenant under a "standard" contract of rental, for the sole purpose of being used in the cultivation of a crop about to be planted upon the land of the landlord, is not subject to outstanding judgment against the tenant, where the judgment creditor did not extend credit to the tenant upon the faith of his possession of the guano.

(b) In popular signification a "standard" contract for rent implies one in which the tenant pays as rent a third of the corn crop and a fourth of the cotton crop grown by him.

DECIDED JANUARY 20, 1916.

Levy and claim; from city court of Sparta—Judge Moore. March 6, 1915.

R. L. Merritt, for plaintiff. Burwell & Fleming, contra.

RUSSELL, C. J. Rives had a fi. fa., issued upon a judgment against John Latimer Jr., levied upon 76 sacks of guano as in the possession of and as the property of the defendant. The fi. fa. was issued and placed upon the general execution docket on July 25, 1913, and the levy was made April 3, 1914. Holmes filed a claim to the guano. On the trial it developed that only 33 sacks of the guano levied upon were actually in the possession of the defendant, and that the remainder of the 76 sacks, as well as these 33 sacks, had been turned over to one Walton Smith by Holmes, to be by him distributed among the tenants of Holmes's land for use in raising crops for Holmes as landlord. It was undisputed that while the title to the guano delivered to these tenants was not reserved by Holmes in writing, the guano was furnished only

for the specific purpose of cultivating his land during the year 1914, and would not have been furnished otherwise. On the trial the claimant, without any objection upon the ground that the statement was a mere conclusion of the witness, testified more than once that it was his guano, and that it was his at the time it was levied on. The jury returned a verdict in favor of the claimant, and exception is taken to the judgment overruling the motion for a new trial.

It is well settled, of course, as a general rule, that title to personal property passes by mere delivery, irrespective of whether the sale is for cash or on credit, and hence it is insisted that when Holmes's agent delivered the guano in question to Latimer without any retention of title or the creation of any lien thereon, the title passed to Latimer. It is further insisted that the testimony to the effect that the claimant owned the land whereon Latimer lived and was farming, and where the guano was found, was wholly irrelevant to the issue; and there was timely objection to the admission of a deed placing title thereto in the claimant. Objection was also made to the introduction of a bill of lading under which the guano was shipped, upon the ground that it did not identify the guano shipped as the guano levied on. It is not apparent that the admission of the bill of lading, even if erroneous, was prejudicial to the plaintiff in error, and the evidence of title might have been admitted in corroboration of the claimant's testimony that the guano was his, since proof that the land was his would make his testimony that he had had his guano shipped there more reasonable; and, on the other hand, as there was no reservation of title to the guano, no reason would have appeared why he should have shipped his guano to the plantation of Latimer or of some other person. Granting that the issue as to the title to the guano should be tried under the same rules as obtain in other claim cases, the positive testimony of the claimant would have authorized the conclusion reached by the jury and embodied in their verdict. The claimant testified unequivocally that the guano was his property, and cross-examination did not demonstrate that this statement of the witness was merely an unwarranted conclusion of law. The record, therefore, does not necessarily invoke a ruling upon some of the points contained in the argument in the briefs. However, it is manifest that the judgment of the lower court is in accord

32

with the public policy of this State as indicated by the statute which gives to mortgages taken to secure advances upon the crops of a particular year, and advances made to aid in making the particular crops, priority over other liens which otherwise would be superior to them. Furthermore, it does not appear from this record, in contradiction of the claimant's testimony that the guano was his property, that he had made a contract of sale of the guano to Latimer.

The testimony shows that Latimer was a tenant on Holmes's place for "standard" rent. In a large section of this State "standard" rent implies a form of contract under the terms of which the tenant pays the landlord a third of the corn and fodder, and a fourth of the cotton and cottonseed, raised upon the rented premises; and, in the absence of any evidentiary explanation in the present case, it may be presumed that the contract which existed between Holmes and Latimer was of this nature. According to the custom in such cases, the landlord pays for a third of the fertilizer used under the corn, and for a fourth of the fertilizer used under the cotton. The record in the present case discloses that the guano was bought by Holmes, and was by him delivered to Latimer as a tenant, for one specific purpose only,—that of "being used under his crop for 1914." The real contract between Holmes and Latimer does not appear, but the evidence strongly indicates that the guano which was the subject-matter of the present litigation was furnished by Holmes to Latimer just as Holmes might have furnished him with a mule or a plow,—for the sole purpose of using it during the cultivation of the crop, and subject to be returned upon Holmes's demand. Of course, the guano, once deposited in the soil, could not be returned, but such fertilizing elements as might remain in the soil and as might be contributed to a succeeding crop would inure to the benefit of the owner of the land. It was not shown that there was ever any contract by which Holmes sold the guano in such a broad sense, therefore, as to pass title. The evidence indicates that he furnished guano with the single intention and for the sole purpose of increasing the yield of the crops planted by his tenant Latimer, and, naturally and incidentally thereto, of increasing the productiveness of his own land. Latimer's possession, as indicated by the evidence, resulted from a contract of limited agency. There is no evidence that Latimer

paid him cash for the guano, and the evidence is positive that Latimer had given no note. Under these circumstances, and in view of Holmes's positive testimony as to his ownership, it would have been merely a matter of conjecture on the part of the jury as to what were the real terms of the contract between Holmes and his tenant as to the guano, and the inferences suggested by the testimony did not compel the repudiation of Holmes's positive testimony upon the point. It was for the jury to say whether the claimant successfully carried the burden imposed upon him by law.

Aside from the claimant's positive declaration as to the ownership, the principle involved in the case is not unlike that ruled in *Holmes* v. *Pope*, 1 *Ga. App.* 338 (3), 343 (58 S. E. 281). Where a landlord supplies a cropper or tenant with guano for the sole purpose of using it to produce crops upon the landlord's land, and especially when, so far as the evidence discloses, the tenant has assumed no liability in the original purchase of the guano, the tenant would have no right to sell it, and it would seem that to subject guano furnished under such circumstances to a pre-existing indebtedness of the tenant, especially when credit had not been extended upon the faith of the tenant's possession of the guano, would be to give to the creditor of the tenant greater rights than the tenant himself possessed, and thus controvert the well-settled principle that a creditor may subject to the lien of his judgment only property belonging to a debtor, by allowing the creditor to extend the rights of his debtor and magnify and multiply the interest of a tenant in property in his possession, merely because the property was found in his possession before it could be used as it was designed to be used. Certainly if a garnishing creditor can obtain no greater rights than the garnishee, a sound public policy would seem to dictate that those commodities, such as guano, corn, fodder, hay, etc., which "perish in the using," and in which a tenant has but a transitory interest, should not be diverted from the channel which is absolutely necessary to the maintenance of the contractual relation of landlord and tenant and landlord and cropper. The adoption of any other rule would destroy the present system of agriculture in at least the major portion of this commonwealth, where often tenants and croppers are unable to obtain credit.

*Judgment affirmed.*